# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| Andrea C. Beck, | ) | C.A. No. 10223-MG |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) |  |
| John A. Greim c/o Bombay Woods | ) |  |
| Maintenance Corporation, | ) |  |
| Defendant. | ) |  |

## MASTER'S REPORT

Date Submitted: March 8, 2018
Draft Report: May 21, 2018
Final Report: October 11, 2018

Andrea C. Beck, PRO SE, Smyrna, Delaware, *Plaintiff.*

Brian T. McNelis, of YOUNG & MCNELIS, Dover, Delaware, *Counsel for Defendant*

GRIFFIN, Master

This action involves a dispute between a homeowner, who has served as a director and officer of the homeowner's association, and the homeowner's association and its president, concerning alleged violations of Delaware General Corporation Laws and the association's failure to enforce deed restrictions under 10 *Del. C.* § 348. Based upon the evidence presented at trial, I recommend that the Court find the homeowner was properly removed as an officer, but invalidate her removal as director or member of the board. Further, I recommend the Court order that the association remedy the situation by conducting a special meeting of its members to vote on the director's removal, or holding an annual election of its board of directors, or by following the Delaware Uniform Common Interest Ownership Act ("DUCIOA") procedures for removal of a board member, within 60 days following the date this report becomes final. And, I recommend that the Court conclude that the association's deed restrictions have not been violated under 10 *Del. C.* §348. This is a final report.

## I. Background

Andrea Beck ("Beck") is a homeowner in the Bombay Woods subdivision in Smyrna, Delaware (the "Development"), who has served as director or member of the Bombay's board of directors (the "Board"), and treasurer[1] of Bombay Woods

---

[1] There is conflicting evidence concerning whether Beck was "treasurer" or "acting treasurer" of Bombay at the time she was removed. I refer to her as treasurer in this report; since it is undisputed that she was an officer, the distinction is not significant for purposes of this action.

Maintenance Corporation ("Bombay"). John Greim ("Greim") is also a homeowner in the Development and the president of Bombay.

Beck was elected to the Board through an election of the board of directors ordered by the Court of Chancery under 8 *Del. C.* § 215(d) and held on May 25, 2013.[2] Beck and two other homeowners in the Development were elected as Board members, and the other two resigned from the Board immediately. Subsequently, Greim and Jeffrey Horvat ("Horvat") were appointed as members of the Board and as president and vice president/secretary, respectively.[3] Beck was also appointed to serve as treasurer.[4]

Beck was purportedly removed from the Board as director, and as an officer, at a Board meeting on February 23, 2014.[5] The minutes from that meeting indicate that

---

[2] It is helpful to review Bombay's history regarding its Board leadership. In approximately 2010, all members of the Board resigned, leaving Bombay without a board of directors to conduct the corporation's business until Beck filed a petition, on February 28, 2013, asking the Court of Chancery to schedule an election of the board of directors under 8 *Del. C.* § 215(d) in order to reinstate the Board. The Court ordered the scheduling of the Board election, which was held on May 25, 2013. *See In re: Bombay Woods Maint. Corp.*, C.A. No. 8369-MA (Del. Ch. Apr. 24, 2013) (ORDER).

[3] The evidence shows that Greim and Horvat were appointed by Beck to the Board during a Smyrna Town Council meeting in and around August 2013, and as officers at a Board meeting shortly thereafter. *See* Trial Tr. 103:6-104:20, 299:7-300:17, 302:1-303:8; Def.'s Tr. Ex. 2.

[4] Trial Tr. 208:3-6, 302:18-21.

[5] There is conflicting information concerning the date of Beck's purported removal. At trial, Beck alleged she was removed at a meeting on March 2, 2014, relying on a typed memorandum dated February 23, 2014, which had March 2nd handwritten in related to when Beck needed to turn over community records and funds. Pl.'s Tr. Ex. 71. That memorandum reflected a similar timing of the Board meeting – February 23, 2014 – as did

Greim and Horvat requested that Beck resign from the Board at that meeting and, when she declined, they voted, by majority vote, to remove her from the Board and as treasurer.[6] The minutes also state that Greim and Horvat asked Beck to hand over the community books by March 2, 2014 so they could be given to the new treasurer. Beck declined to accept her removal.[7]

The following summer, the Board sought to confirm Beck's removal by seeking Bombay members' vote on her removal as a part of the annual meeting process. The Board followed its standard procedure for seeking action by Bombay members, which included posting a notice about the annual meeting in the Development and mailing a notice that specifically identified Beck's removal as a topic, and ballots, to all Bombay members.[8] After a meeting in August of 2014, at which there were insufficient ballots submitted for a quorum, the Board went door-to-door in the Development seeking to collect ballots to obtain a quorum.[9] The Board

---

the meeting minutes, which confirmed that Beck was asked to return Bombay records by March 2, 2014. Although a memorandum to Bombay's bank offered February 17, 2014 as the date that Beck was removed, there was a February 25, 2014 email from Greim to Beck confirming the February 23, 2014 vote to remove her from the Board and as treasurer. Pl.'s Tr. Exs. 6, 75. The evidence, overall, is persuasive that the meeting at which Beck was purportedly removed occurred on February 23, 2014.

[6] Def.'s Tr. Ex. 1.

[7] Beck claimed she remained the only elected Board member and that, on February 25, 2018, she removed Greim and Horvat from their positions. *See* Pl.'s Tr. Ex. 72. Greim responded that she did not have the authority to remove them unilaterally. Pl.'s Tr. Ex. 6.

[8] Trial Tr. 312:21-314:2.

[9] Trial Tr. 314:4-315:4, 315:20-316:5.

sent a notice to Beck on October 20, 2014 notifying her that a majority of Bombay members had voted to remove her as a director.[10]

On October 10, 2014, Beck filed a *pro se* complaint against Greim and Bombay, alleging that Greim and Bombay acted improperly by transferring funds without legal authority or approval from the director, disregarding proper budgeting and accounting procedures, violating Bombay's bylaws, maintenance declaration and the Delaware General Corporation Law, removing board members improperly, failing to enforce Bombay members' voting rights or to properly notify members of votes, retaining legal counsel using Bombay's funds without authority, and failing to maintain Bombay's landscaping, jogging trails, and storm water retention ponds under 10 *Del. C.* § 348.

A discovery dispute ensued and Master Ayvazian issued a final report on February 23, 2016, in which she recommended dismissing the complaint because she found that Beck was asserting derivative claims on behalf of Bombay against Greim for alleged corporate misconduct and she must be represented by counsel.[11]  Beck filed exceptions to the Master's report and, in a July 22, 2016 letter opinion, Vice Chancellor Montgomery-Reeves agreed with the Master's conclusion that Beck's purported corporate mismanagement or misconduct claims against Greim and

---

[10] Pl.'s Tr. Ex. 19.

[11] *Beck v. Greim*, 2016 WL 690873, at *1 (Del. Ch. Feb. 22, 2016), *exceptions granted in part*, 2016 WL 3962053 (Del. Ch. July 22, 2016).

Bombay are derivative claims and that Beck must be represented by counsel to pursue them.[12] However, the Vice Chancellor also held that if Beck wishes to pursue purported 8 *Del. C.* § 225 claims, including challenging her removal from the Board and whether Greim and Horvat (then Bombay's vice president) were properly elected to the Board, she may proceed *pro se*.[13] She remanded for the Master's initial determination whether Beck's claims regarding the alleged failure to maintain the Development's common interest areas may be pursued by Beck *pro se* under 10 *Del. C.* § 348.

In considering that issue on remand, Master Ayvazian, in a final report issued on March 2, 2017, determined that Beck's complaint did not set forth a valid claim under 10 *Del. C.* § 348 because she was not seeking enforcement of the Development's deed restrictions, but rather, reciting her claims regarding the common interest areas as examples of corporate misconduct and mismanagement, which are derivative claims and cannot be pursued *pro se*.[14] Beck filed exceptions to

---

[12] *Beck v. Greim*, 2016 WL 3962053, at *2 (Del. Ch. July 22, 2016).

[13] *Id.* at *3. Beck's complaint also alleged that Greim committed hate crimes, and threatened and harassed her. The February 22, 2016 Master's report recommended dismissal of Beck's hate crimes/harassment claims as legally frivolous under 10 *Del. C.* § 8803(b), because the Court of Chancery lacks subject matter jurisdiction over criminal matters, and the Vice Chancellor agreed with the Master's holding. *Id.*

[14] Master Ayvazian referred to the absence of a claim for enforcement of the architectural review process and improvements on the upkeep of the community's common areas, in the prayer for relief section in Beck's complaint to support her conclusion that Beck is seeking derivative claims and not claims under 10 *Del. C.* § 348. *Beck v. Greim*, 2017 WL 829659, at *2 (Del. Ch. Mar. 2, 2017).

5

the March 2, 2017 Master's report and Vice Chancellor Montgomery-Reeves granted the objections to the report, concluding that Beck may proceed *pro se* with her claims to enforce deed restrictions as described in her complaint.[15]

After Master Ayvazian's retirement, the case was reassigned to me. Trial was scheduled for January 22, 2018, but rescheduled at Beck's request for medical reasons, and held on March 8, 2018.[16] I reserved my decision and issued my draft report on May 21, 2018, setting forth my findings on the issues remaining under consideration in this case – Beck's claims under 8 *Del. C.* § 225, focusing on whether Beck was improperly removed from the Board and as treasurer, and whether Greim and Horvat were properly elected to the Board; and under 10 *Del. C.* § 348, addressing the maintenance of the Development's common interest area that directly impacts Beck and her property, including dead trees in the woods behind her house, the jogging path, and the storm water catch basin on or near her property.

---

[15] Docket Item ("D.I.") 122 (Aug. 11, 2017) (Vice Chancellor Montgomery-Reeves' Order finds that Beck included claims to enforce deed restrictions in her complaint, although not in the complaint's prayer for relief).

[16] Beck filed subpoenas for four current or former homeowners who, at some point, had either served on the Board or as an officer. D.I. 140-143 (Feb. 27, 2018). Greim and Bombay moved to quash the subpoenas because Beck failed to provide a valid purpose for the issuance of the subpoenas. D.I. 144-147 (Feb. 27, 2018). Beck did not oppose the quashing the subpoena for Horvat, who lives in Ohio and was unavailable for medical reasons. Following a hearing on March 1, 2018, all of the motions were granted, based upon Beck's failure to show that the subpoenaed witnesses' testimony would be relevant to the specific issues to be considered at trial.

Beck took exceptions to my draft report, which have been fully briefed. I reviewed the exceptions and believe that they, for the most part, repeat arguments that were adequately addressed in the draft report. Where appropriate, I have addressed the exceptions briefly in this report. This is my final report.

## II. Analysis

### A. Beck's claims under 8 *Del. C.* § 225

The Court of Chancery has authority to determine "the validity of any election, appointment, removal or resignation of any director or officer of any corporation, and the right of any person to hold such office," pursuant to 8 *Del. C.* §225.[17] Beck challenges her removal as an officer and director of the Board and seeks reinstatement. As a plaintiff in a 8 *Del. C.* §225 action, Beck bears the burden of proving by a preponderance of the evidence that she is entitled to relief – that her removal as an officer or director should be invalidated.[18] In considering Beck's claims, the "relative weight given to any particular piece of evidence, and particularly witness testimony" is determined by the Court.[19]

---

[17] *See Nevins v. Bryan,* 885 A.2d 233, 237 (Del. Ch. 2005), *aff'd,* 884 A.2d 512 (Del. 2005) (allowing the *pro se* plaintiff to pursue an action under 8 *Del. C.* § 225 to determine the proper directors of the corporation).

[18] *Cf. Gassis v. Corkery*, 2014 WL 2200319, at *11 (Del. Ch. May 28, 2014), *aff'd*, 113 A.3d 1080 (Del. 2015); *In re IAC/InterActive Corp.,* 948 A.2d 471, 493 (Del. Ch. 2008).

[19] *In re IAC/InterActive Corp.,* 948 A.2d at 493 (citation omitted); *see also BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 276-77 (Del. Ch. 2003), *as revised* (Oct. 6, 2003).

Since Bombay is a common interest community as defined under the Delaware Uniform Common Interest Ownership Act ("DUCIOA"), applicable DUCIOA provisions, along with Bombay's Bylaws and other governing documents, need to be analyzed related to each of Beck's claims. [20] Bombay predates the enactment of DUCIOA, so it is a pre-existing common interest community.[21] DUCIOA provides that only specified DUCIOA sections apply to pre-existing communities.[22] If a DUCIOA section applies to a pre-existing community, then DUCIOA controls if there is a conflict between the DUCIOA provisions and the community's bylaws or other governing documents. But, if a DUCIOA section does not apply to a pre-existing community, then DUCIOA controls only if the matter at issue is not expressly addressed in the community's governing documents.[23]

### 1. Beck's removal as an officer of Bombay

Beck argues that her removal as an officer was invalid because it was not on the agenda for the February 2014 Board meeting, and because Beck and Greim were not properly elected to the Board and, therefore, did not have the authority to remove

---

[20] *See* 25 *Del. C.* § 81-103(11) (defines common interest communities which would include Bombay).

[21] DUCIOA became effective on September 30, 2009. Bombay predates DUCIOA, since its Amended and Restated Maintenance Declaration and Declaration of Restrictions Applicable to Bombay Woods [hereinafter "Declaration of Restrictions"] was executed on January 3, 2002. D.I. 1, Ex. 17.

[22] 25 *Del. C.* § 81-119.

[23] *Id.*

her. I find that Greim and Horvat, acting as a majority of the Board, properly removed Beck as an officer in February of 2014.

DUCIOA does not specifically address the removal process for officers, so no specific DUCIOA requirements apply here.[24] Bombay's governing documents consist of its Certificate of Incorporation, Declaration of Restrictions, and Bylaws of the Bombay Maintenance Corporation (the "Bylaws"). Only the Bylaws address the removal of officers.[25] They provide that the Board has the authority to choose the officers, including a president, one or more vice presidents, secretary, treasurer and can remove any officer, that it chose or appointed, "with or without cause at any time by the affirmative vote of a majority of the whole Board of Directors."[26] Under the Bylaws, the Board could appoint or remove officers at a Board meeting, and there is no requirement that advance notice of Board meetings be provided to all Bombay members. The Bylaws require that notice of Board meetings be provided to all Board members, but not that a specific Board meeting agenda be provided in advance of, or

---

[24] DUCIOA provisions addressing the role and duties of officers of common interest communities are limited. *See* 25 *Del. C.* § 81-303(a) ("officers . . . shall exercise the degree of care and loyalty required of an officer . . . of a nonprofit corporation organized under Delaware law"); 25 *Del. C.* § 81-306(a)(3) (bylaws must provide for "the manner of electing and removing . . . officers and filling vacancies").

[25] D.I. 1, Ex. 20 (*Bylaws of Bombay Woods Maintenance Corporation* (hereinafter "*Bylaws*")), Art. VIII.

[26] *Id.*

followed at, the meeting.[27] DUCIOA's advance notice requirements for meetings of the executive board of a common interest community do not apply to Bombay, a pre-existing community.[28]

Beck's removal as treasurer took place at the February 23, 2014 Board meeting. All three members of the Board – Beck, Greim, and Horvat – attended that meeting and Beck was removed as an officer at that meeting by Greim and Horvat.[29] Under the Bylaws, Greim and Horvat, voting as a majority of the Board, had the authority to remove Beck as an officer, with or without cause, if the meeting was conducted consistent with the Bylaws. The Board members were provided advance notice about that meeting, although Beck's removal was not included as a topic on the proposed agenda.[30] It is not clear from the evidence whether all Bombay members were notified about this meeting, or its agenda, in advance.[31] But, the

---

[27] The Bylaws require that directors be given advance notice of meetings, unless the meeting is organizational following the annual election, but do not address the need to provide a meeting agenda in advance. *Id.*, Art. V §§ 1, 2.

[28] 25 *Del. C.* §§ 81-119, 81-308A(b). Even if DUCIOA applied, DUCIOA provides that notice deficiencies will not invalidate board actions, unless those actions are set aside by a court as a result of litigation brought within 60 days after the approval of the relevant meeting minutes. 25 *Del. C.* § 81-308A(g). The action removing Beck as an officer took place on February 23, 2014 and Beck's litigation concerning the Board's actions was filed in October 2014, close to eight months after the Board's February 2014 meeting. Any notice irregularities would not invalidate the Board's actions under DUCIOA.

[29] *See* Def.'s Tr. Ex. 1.

[30] Pl.'s Tr. Ex. 70.

[31] In an email dated February 6, 2014, Greim discussed putting the agenda "on Facebook and [Bombay's] webpages with the time and place so folks can attend." Pl.'s Tr. Ex. 70.

Bylaws do not require that notice of Board meetings be provided to all Bombay members, or that a specific agenda be provided in advance of, and followed at, the meeting. And DUCIOA's notice provisions do not apply in this instance. Therefore, the Board's February 23, 2014 meeting satisfied the Bylaws' notice requirements.

Since Beck has not met her burden of proving by a preponderance of the evidence that she was improperly removed as an officer, I conclude the Board's removal of Beck as an officer at the February 23, 2014 Board meeting was valid.

## 2. Beck's removal as director or Board member

Beck also argues that her removal as a director or member of the Board in February 2014 was invalid because it was not on the agenda for the February 2014 Board meeting, and Bombay members were not notified about the special meeting and did not participate in the meeting to vote on her removal. She further claims that the subsequent community vote on her removal in the fall of 2014 was held by ballot, contrary to the voting process specified in the Bylaws.[32]

Greim and Bombay assert that Beck was properly removed as director in February 2014 but, even if the Court finds that her removal as a director at that time

---

But, there is no evidence in the record confirming what notice was provided to Bombay members concerning the February 23, 2014 Board meeting.

[32] Beck also argued that the Bylaws are void because they were not recorded. I decline to address this issue. If the Bylaws were determined to be invalid, DUCIOA controls and Beck's claims would be analyzed under DUCIOA. In this report, I analyze all of her claims under DUCIOA in the alternative, and my findings would not change even if the Bylaws were determined not to apply.

was improper, her removal was confirmed by community vote in the fall of 2014. A community vote was held concerning Beck's removal from the Board during the summer and fall of 2014.[33] Notice about the meeting was posted and sent to all Bombay members, and the use of ballots for that vote is consistent with the voting process followed by Beck and others previously for Bombay member actions, including for the May 23, 2013 election through which Beck was elected to the Board.[34] Greim and Bombay claim the Board complied with the Bylaws "whether in spirit or the letter of the law."[35] They further argue that, given Beck's removal occurred more than four years ago and the Board has continued its work during the intervening period, the only possible relief, if her removal is determined to be improper, is to order a new election of the Board.[36]

I conclude the Board's removal of Beck as a director in February 2014, and through the community vote removing her in the fall of 2014, were both invalid.

The Bylaws state that "the number of directors who shall constitute the whole board shall be such number as the Board of Directors shall determine, from time to time, by resolution of the Board of Directors," and that "[a]ny Director may be removed from the Board, with or without cause, by a majority vote of the Members

---

[33] Trial Tr. 312:21-316:8. *See also* Pl.'s Tr. Ex. 19; Def.'s Tr. Ex. 4.

[34] Trial Tr. 36:1-3, 256:1-259:4, 312:21-24, 314:4-14, 330:11-18; *see also* Pl.'s Tr. Exs. 5, 76.

[35] Trial Tr. 361:1-3.

of the Corporation."[37] The Bylaws further provide that annual meetings will be held at which Bombay members elect the Board each year and transact other business, and that special meetings of the members may also be held.[38] Written notice of member meetings shall be mailed to each member entitled to vote, with the notice specifying the place and time of the meeting and, "in the case of a special [members'] meeting, the purpose of the meeting."[39] The Bylaws state that a quorum of 51% of members entitled to vote must vote at a meeting, either in person or by proxy, for members to take action at that meeting.[40]

DUCIOA also addresses the removal of directors in section 81-323 of title 25 of the Delaware Code. Section 81-323 applies to pre-existing communities, such as Bombay, so DUCIOA controls if there is a conflict between the Bylaws and DUCIOA.[41] DUCIOA provides that a Board member can be removed with or without cause, "notwithstanding any provision of the declaration or bylaws to the contrary" and without a quorum, if the specified process for voting at the special

---

[36] Trial Tr. 362:23-363:3.

[37] *Bylaws*, Art. IV §§ 1, 2.

[38] *Bylaws*, Art. III §§ 3, 4.

[39] *Id.*, Art. III § 5.

[40] *Id.*, Art. III §§ 7, 8.

[41] 25 *Del. C.* § 81-119.

meeting is followed.[42]   So, a Bombay Board member may be removed, consistent with DUCIOA's procedures, even if the Bylaws' procedures are not followed.

Beck's purported removal as a director on the Board took place at the February 23, 2014 Board meeting, during which Greim and Horvat voted to remove Beck both as an officer and a director.   The Bylaws authorize Bombay members to remove directors.[43]   The Board does not have the authority to remove Beck as a director, since that power was not delegated to it by the Bylaws.[44]

The Bylaws do not expressly state any procedure or timing for the removal of a director.   However, they provide that Bombay members can vote at an annual or special meeting (and that directors are elected at the annual meeting).   The evidence does not show that Bombay members voted on Beck's removal in February 2014, or that they were notified in advance about the meeting at which the Board purportedly removed her.   Since the Board did not have the authority to remove Beck as a

---

[42] 25 *Del. C.* § 81-323. Section 81-323(c) procedures include allowing all persons present at the meeting the opportunity to speak concerning the removal, then recessing the meeting, and notifying members that they can vote by ballot (written or electronic) within 30 days. Section 81-323(d) provides that, if the number of votes cast in favor of removal exceeds those against, and is greater than one-third of total votes possible, then the Board member is removed.

[43] *Bylaws*, Art. IV § 2.

[44] The Board has all powers and authority vested in Bombay, except those "reserved to the membership" by other Bylaws. *Bylaws*, Art. VI § 1 (2).  In this instance, the authority to remove directors was reserved to the membership by the Bylaws, so the Board had no authority to take such action.

14

director, I recommend the Court invalidate the Board's removal of her as a director in February 2014.[45]

Following the February 2014 Board meeting, the Board sought Bombay members' approval of Beck's removal as a director during the summer and fall of 2014.[46] Greim testified that the Board followed its standard procedures for seeking action by Bombay members, including posting notice about the meeting in the Development and mailing out notices to all Bombay members, which specifically identified Beck's removal as a topic, and ballots for Bombay members to fill out and return to vote on Beck's removal.[47] The evidence indicated there was a Board meeting in August 2014, but it was not clear whether that meeting was actually a

---

[45] In her exceptions, Beck argues that she could not be removed because the Board was improperly constituted to include a co-treasurer beginning in 2014, in violation of the Declaration of Restrictions and the Bylaws. Pl.'s Opening Br. in Support of Exceptions, at 6. Since I find that Beck's removal as a Board member was invalid, I do not need to address this issue. However, if considered *arguendo*, Beck's argument fails. The Declaration of Restrictions' provision she claims limits the size of the Board pertains to the Architectural Review Committee, which was established in the Declaration of Restrictions and ceased to exist when its duties were transferred to Bombay in 2004. *See* Declaration of Restrictions ¶ 20. Bombay's Certificate of Incorporation provides that the Bylaws establish the number of members on the Board. *Id.*, Ex. 16 (Certificate of Incorporation) [hereinafter "Certificate of Incorporation"] ¶ 9. And, the Bylaws state that the Board determines the number of Board members and also selects a president, one or more vice-presidents, secretary, treasurer and "such other officers as may from time to time be chosen by the Board." *Bylaws,* Art. IV § 1, Art. VIII. There is no limitation preventing the Board's appointment of a co-treasurer in Bombay's governing documents.

[46] Def.'s Tr. Ex. 4.

[47] Trial Tr. 312:21-314:2, 330:11-18.

15

membership meeting.[48]  Regardless, a quorum was not obtained at that meeting, and the Board subsequently went door-to-door in the Development seeking to collect ballots in order to obtain the quorum needed.  Greim testified that it took several months – into the fall of 2014 – for a sufficient number of ballots, representing a majority of Bombay members, to be submitted to achieve a quorum, in order to confirm Beck's removal as a director.[49]  Greim also testified this process has been utilized for many years to ensure community participation since it is impossible to get a quorum at a membership meeting.[50]  Beck confirmed that the process of canvassing Bombay members to ask them to complete ballots on Bombay business was used regularly to satisfy the quorum requirement for membership votes.[51]  In fact, ballots had been used related to Beck's election to the Board in May 23, 2013.[52]

In this case, Bombay members have the authority to remove Beck as a director.  However, the process followed to seek Beck's removal as director during the summer

---

[48] The minutes for the August 14, 2014 Board meeting indicate that the ballots seeking Beck's removal, along with other actions to be taken by Bombay members, had been disseminated and 33 had been returned, all in favor of Beck's removal.  Those minutes provide that Greim "encouraged board members to continue to get out to the community to collect ballots that were handed out and to continue contacting the community members that have not answered their doors yet." Pl.'s Tr. Ex. 19.

[49] Trial Tr. 314:4-316:8. Written ballots on Beck's removal were signed by Bombay members on varying dates, extending from June 30, 2014 through November 5, 2014. Def.'s Tr. Ex. 4.

[50] Trial Tr. 316:17-24.

[51] Trial Tr. 256:1-259:3.

[52] Pl.'s Tr. Ex. 5.

and fall of 2014 did not satisfy the Bylaws' requirement that a quorum of Bombay members vote in person or by proxy at a meeting. The Bylaws authorize the Bombay members to take action in meetings and that members are "entitled to vote in person or by proxy," but do not authorize the taking of actions by members outside of meetings, such as through ballots obtained by door-to-door canvassing.

Nor did the voting process comply with DUCIOA's special meeting procedures for removing a director, which allow for voting by electronic or written ballots and a voting quorum less stringent than that required by the Bylaws.[53]  Therefore, because of procedural irregularities in the voting process, I recommend that the Court invalidate the 2014 Bombay members' vote removing Beck, which also eliminates any possibility of that vote ratifying the Board's February 2014 action to remove her.

If the Board's and Bombay's actions removing Beck as a director are invalidated without the Court taking additional action, Beck would be returned to a position on the Board to which she was elected in May 2013, or more than five years ago.  Her purported removal as a director occurred four years ago, leaving Bombay members with no certainty as to Board membership during that period.  Further, the Board has continued to conduct business since that time and it is not appropriate, after such a long period, to reinstate her to the Board.  The Court, when determining whether the removal of a director is valid, is authorized to "make such order or decree

---

[53] *See* n. 42 *supra*.

. . . as may be just and proper."[54]  Therefore, I recommend that the Court order that Bombay conduct a special meeting of its members to vote on Beck's removal, or hold an annual election of its Board pursuant to 8 Del. C. § 225(a), or follow DUCIOA procedures for removal of a board member.[55]  The Court should further order that such action be completed by Bombay within 60 days following the date this report becomes final.

### 3.  Greim and Horvat's status as officers and Board members

Further, Beck argues that Greim and Horvat were not properly elected to the Board and therefore, did not have the authority to remove her as an officer or director.  Under the Bylaws, if Board members resign, the remaining members of the Board, by majority vote, have the authority to select the replacement Board members.[56]  Here, Greim and Horvat were appointed by Beck, the remaining Board member after the resignation of the two other elected Board members, to serve the unexpired terms of their predecessors on the Board (directors are elected for one year

---

[54] 8 Del. C. § 225(a); *Flaa v. Montano*, 2014 WL 2212019, at *11 n. 59 (Del. Ch. May 29, 2014).

[55] Beck argues in her exceptions that she remains in place as a director, should be allowed to finish her term as director, and if an election is conducted to remove her as director, it would indicate that she "had done something wrong."  Pl.'s Opening Br. in Support of Exceptions, at 7, 10.  I conclude that Beck's removal from the Board was invalid, but do not find the appropriate remedy is to return her to the Board, given the length of time since her purported removal from the Board.  A Board member may be removed "with or without cause," so it is not appropriate to presume wrongdoing on the part of a Board member who is being removed.

18

terms and serve until their successor is elected or qualified).[57]   Beck's claim is unsupported by the evidence,  which shows that Greim and Horvat were properly appointed by her to the Board, and were acknowledged as officers and Board members by Beck and others in the fall of 2013.[58]

Beck also claims that, when Greim and Horvat became officers, they automatically relinquished their positions on the Board.  This claim is refuted by the Bylaws, which state the president and vice president "shall be chosen from among the Directors."[59]  Accordingly, I find that Greim and Horvat were properly serving on the Board in February 2014 when they removed Beck as an officer.

### B. Beck's claims under 10 *Del. C.* § 348

Beck argues that Greim and Bombay have violated deed restrictions under 10 *Del. C.* § 348, by failing to maintain the Development's common area, including dead trees in the woods behind her house, the jogging path, and the storm water catch basin (hereinafter "catch basin") on or near her property, and by failing to uphold the architectural review duties as related to installation of pools and fences.[60]  Greim and

---

[56] *Bylaws,* Art. IV § 2.  DUCIOA, similarly, authorizes the board to "fill vacancies in its membership for the unexpired portion of any term." 25 *Del. C.* § 303(b).

[57] *See Bylaws*, Art. IV § 1.

[58] *Cf.* Def.'s Tr. Exs. 2, 3; Trial Tr. 19:5-7, 103:11-104:21.

[59] *Bylaws*, Art. VIII.

[60] Beck continues to seek to address all claims against Bombay and the Board related to the Development, including the maintenance of the storm water management pond, which is not located near her property and does not affect her directly, as well as other matters that are

Bombay respond that Bombay properly maintains the common areas consistent with Bombay's and the Board's duties.

Beck has the burden of proving her claim of deed restriction violations under 10 *Del. C.* § 348 by a preponderance of the evidence.[61] Management duties of Bombay are generally delegated to the Board in the Bylaws.[62] Bombay is tasked with providing for "the common safety and well-being of residents of [the Development].[63] DUCIOA provides that a common interest community association, through its board, is responsible for maintenance of the community's common elements.[64]

Beck testified that three trees planted as sound barriers in the common area behind her house had died and, when the Board did not remove them, she did.[65] She

---

derivative in nature. Given the previous decisions in this case precluding consideration of derivative matters, the focus at trial was on her claims regarding violations of the deed restrictions that affect her or her property directly.

[61] *See Adams v. Calvarese Farms Maint. Corp., Inc.*, 2010 WL 3944961, at *7 (Del. Ch. Sept. 17, 2010); *Estate of Osborn ex rel. Osborn v. Kemp*, 2009 WL 2586783, at *4 (Del. Ch. Aug. 20, 2009), *aff'd sub nom. Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010).

[62] Certificate of Incorporation ¶ 9; *Bylaws,* Art. VI § 1 (2) (providing the Board shall exercise for Bombay all of its powers, duties and authority vested in, or delegated to, Bombay, and not reserved for Bombay members).

[63] Declaration of Restrictions ¶ 20.

[64] 25 *Del. C.* § 81-307(a). Since section 81-307 applies to pre-existing communities, its provisions control if there is a conflict. 25 *Del. C.* § 81-119. Here, there is no conflict between the Bylaws and DUCIOA, and DUCIOA further refines the Board's duties related to maintenance of common elements.

[65] Trial Tr. 252:22-254:13.

20

further testified that the jogging path, which extends behind her house over part of the Development, had become overgrown with weeds, poison ivy and poison sumac, and that trash from the common area blew onto her property.[66] Her testimony indicated that she believed the trash came from drivers littering on the highway adjacent to the Development, which then blew over the common area onto her property.[67] Finally, she asserted the catch basin behind her property has been clogged with debris, and, if all of the six catch basins in the Development are not maintained properly, the water could back up and flood her basement.[68]

In response, Greim testified that the dead trees were not on the common area but on the berm bordering the highway; there are contractors to clean up the common area; there has been no formal jogging path since he has lived in the Development (since July 2007); and the catch basin is on her property and not the common area, and has never caused any flooding or drainage problems.[69]

Beck's claims regarding the failure to maintain common areas, related to the jogging path, dead trees, trash, and catch basin near her property, are unsupported by the evidence. Beck has the burden of proving, by a preponderance of the evidence, that Greim, as president of Bombay, or Bombay, have failed to satisfy their duties

---

[66] Trial Tr. 214:15-19, 219:14-17, 227:15-17, 246:12-247:18.

[67] Trial Tr. 246:12-247:18.

[68] Trial Tr. 224:11-19, 242:16-243:11.

[69] Trial Tr. 317:10-23, 318:2-4, 318:10-319:1, 319:9-20.

with regard to maintaining Bombay's common elements, or providing for the common safety and well-being of the Development's residents. Evidence at trial depicted the area that Beck called a "jogging path" as "open space," and the pictures she provided did not show an area that was overgrown significantly.[70] Further, I do not find it reasonable to conclude that Greim or Bombay violated their duties by failing to make sure litter from the adjacent highway does not blow onto a homeowners' property.[71] Finally, with regard to debris in the catch basin, it is not clear whether the catch basin is on Beck's property or just beyond it in the common area. Bombay's Declaration of Restrictions addresses catch basins, providing that "[l]ot owners shall be responsible to keep the drainage casement [free] of debris and weeds . . .[i]f the lot owner fails to properly maintain the drainage casement, [Bombay] may come upon the lot and maintain [it] at the lot owner's expense."[72] If it is on Beck's property, then it is her responsibility to keep the catch basin free of debris. If it is not, Bombay is responsible for maintaining it. Regardless, there is no credible evidence that the catch basin was clogged or is affecting the safety and well-being of the Development. Accordingly, I find that Beck has not met her burden of

---

[70] Pl.'s Tr. Ex. C.

[71] There was no evidence presented that this trash was of an amount and nature that would affect the safety or well-being of Bombay members.

[72] Declaration of Restrictions ¶ 19.

22

proving that Greim and Bombay failed to maintain Bombay's common areas such that they violated their duties under the deed restrictions or Delaware law.[73]

## III. Conclusion

For the foregoing reasons, I recommend that the Court find Beck was properly removed by the Board as treasurer of Bombay in February 2014, but invalidate her removal as director or member of the Board – either at the February 2014 Board meeting or by the community vote that occurred in the fall of 2014. Further, I recommend that the Court order that Bombay conduct a special meeting of its members to vote on Beck's removal, or hold an annual election of its Board, or follow DUCIOA procedures related to the removal of a board member. The Court should further order that such action be completed by Bombay within 60 days following the date this report becomes final. Finally, I recommend that the Court conclude Greim and Bombay have not violated their duties under Bombay's deed restrictions by failing to maintain aspects of Bombay's common areas as claimed by Beck. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

---

[73] In her exceptions, Beck sought to submit additional evidence concerning the walking path and common area near her property. Pl.'s Opening Br. in Support of Exceptions, at 13-14. Even if I consider her supplemental evidence, I still conclude the evidence is not sufficient to show that Greim or Bombay violated their duties under Bombay's deed restrictions.